Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:	516.741.4977
Facsimile:	516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIM DUNLEA,<br><br>       Plaintiff,<br><br>vs.<br><br>DIFFUSION PHARMACEUTICALS INC., ROBERT COBUZZI, JR., JANE H. HOLLINGSWORTH, ALAN LEVIN, ROBERT ADAMS, MARK T. GILES, and DIANE LANCHONEY,<br><br>       Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Tim Dunlea ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Diffusion Pharmaceuticals Inc. ("Diffusion" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with EIP Pharma, Inc. ("EIP"), through merger

- 1 -

vehicle Dawn Merger Sub, Inc. ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all stock transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a March 30, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of EIP common stock will be converted into the right to receive a number of newly issued Diffusion shares resulting in EIP shareholders owning 77.26% of the Pro Forma Company, thus substantially diluting Diffusion shareholders' interest in the surviving entity.

3. Thereafter, on May 11, 2023, Diffusion filed a Registration Statement on Form S4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into an agreement which will provide no consideration to any Company stockholder whatsoever, other than the dilution of their shares.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Diffusion and EIP, provided by Diffusion and EIP management to the Board and the Board's financial advisor Canaccord

Genuity LLC. ("Canaccord") (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Canaccord, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Diffusion stockholder.

8. Defendant Diffusion a biopharmaceutical company, develops novel therapies that enhance the body's ability to deliver oxygen. Diffusion is incorporated in Delaware and has its principal place of business at 300 East Main Street, Suite 201, Charlottesville, VA 22902. Shares of Diffusion common stock are traded on the Nasdaq Stock Exchange under the symbol "DFFN."

9. Defendant Robert Cobuzzi, Jr. ("Cobuzzi") has been a Director of the Company at all relevant times. In addition, Cobuzzi serves as the President and Chief Executive Officer ("CEO") of the Company.

10. Defendant Jane H. Hollingsworth ("Hollingsworth") has been a director of the Company at all relevant times. In addition, Hollingsworth serves as the Chairman of the Company Board of Directors.

11. Defendant Alan Levin ("Levin") has been a director of the Company at all relevant times.

12. Defendant Robert Adams ("Adams") has been a director of the Company at all relevant times.

13. Defendant Mark T. Giles ("Giles") has been a director of the Company at all relevant times.

14. Defendant Diane Lanchoney ("Lanchoney") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16. Non-Party EIP is a private pharmaceutical company. Parent is headquartered in Cambridge, Massachusetts.

17. Non-Party Merger Sub is a wholly owned subsidiary of the Company created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District. In addition the Plaintiff is domiciled in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

21. Diffusion Pharmaceuticals Inc. is a biopharmaceutical company that develops novel therapies that enhance the body's ability to deliver oxygen. The Company's lead product candidate is Trans Sodium Crocetinate that is developed to enhance the diffusion of oxygen to tissues, as well as to treat COVID-19 disease.

22. The Company's most recent performance press release, revealing performance results from the year preceding the announcement of the Proposed Transaction, indicated impressive clinical success. For example, in the November 14, 2022 press release announcing its Q3 2022 financial results, the Company highlighted such successes as continued advancements for a phase 2 clinical trial for its flagship product, Trans Sodium Crocetinate, in relation to potential applications for treatment of glioblastomas.

23. Despite this upward trajectory, the Individual Defendants have caused Diffusion to enter into the Proposed Transaction without providing requisite information to Diffusion stockholders such as Plaintiff.

*The Flawed Sales Process*

24. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate the Proposed Transaction by any means possible.

25. Notably, the Registration Statement fails to disclose adequate reasoning as to why the board would agree to a deal in which shareholder's interest would be diluted, with no consideration given.

26. The Registration Statement fails to disclose whether a committee of disinterested directors was formed to review the Proposed Transaction and if so, the identity of the directors who sat on said committee and what powers the committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. On the other hand, if a committee was not formed, the Registration Statement fails to adequately disclose why a committee of disinterested directors was not formed.

27. Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and EIP, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

28. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

29. On March 30, 2023, EIP and Diffusion issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **BOSTON, MA and CHARLOTTSVILLE, VA –** March 30, 2023 – EIP Pharma Inc. (EIP Pharma), a privately held clinical-stage company focused on developing treatments for neurodegenerative diseases, and Diffusion Pharmaceuticals Inc. (Diffusion or Diffusion Pharmaceuticals) (NASDAQ: DFFN), today announced that the companies have entered into a definitive merger agreement for an all-stock transaction forming a publicly traded, combined company that will focus on the

advancement of EIP Pharma's pioneering pipeline of oral stress kinase inhibitors, including its lead drug candidate neflamapimod, which is currently being developed for the treatment of dementia with Lewy bodies (DLB).

"With this proposed merger, we are creating a leading company focused on developing treatments for neurodegenerative diseases, beginning first with neflamapimod for the treatment of dementia with Lewy bodies, the second most common type of dementia after Alzheimer's disease, and for which there are currently no approved treatments," said John Alam, MD, Chief Executive Officer of EIP Pharma. "We believe neflamapimod is poised to be the first to market disease-modifying drug therapy for DLB, with the potential to reverse and possibly slow the progression of synaptic dysfunction that contributes to the hallmark neurological decline associated with this devastating disease. The combined company will leverage an experienced drug development and leadership team, and we expect it to be well capitalized to advance neflamapimod through to Phase 2b clinical data."

"This transaction is the result of a thorough strategic review process led by Diffusion's board of directors and executive team initiated in 2022 to identify and negotiate the most compelling, value-enhancing transaction for Diffusion stockholders. From this, EIP Pharma's clinical programs, management team and corporate strategy stood out amongst the many bids we received," said Robert J. Cobuzzi, Jr., Ph.D., Chief Executive Officer of Diffusion Pharmaceuticals. "We believe this proposed merger is opportunistic and exciting for our shareholders, as EIP has built a robust pipeline of highly needed CNS therapeutic candidates, and we are highly confident in the capabilities of John and his team to support the leadership of the combined company. Taken together, we are thrilled at the prospect of combining our resources and expertise to join EIP's unwavering commitment to treat patients with neurodegenerative diseases."

Upcoming Anticipated Catalysts/Milestones

EIP Pharma has several anticipated catalysts and development milestones for neflamapimod through to the end of 2024, including:

- Presentation of Phase 2a clinical data in an oral presentation at the upcoming AD/PD™ 2023 International Conference on Alzheimer's and Parkinson's Diseases and related neurological disorders, being held March 28 – April 1, 2023, in Gothenburg, Sweden

- Initiate Phase 2b clinical study evaluating neflamapimod in patients with DLB during the second quarter of 2023

- Closing of the merger with Diffusion in mid-2023

- Publication of additional results from the Phase 2a clinical study in DLB in a peer-reviewed medical journal in the second half of 2023

- Completion of enrollment into the Phase 2b clinical study in DLB in the first half of 2024

- Reporting of data from placebo-controlled portion of the Phase 2b DLB study during the second half of 2024

EIP Pharma was recently awarded a $21 million grant from the National Institutes of Health's National Institute on Aging (NIA) that will fully fund development costs associated with the planned Phase 2b study. The NIA grant funds will be disbursed over the course of the study as costs are incurred.

About the Proposed Merger

Under the terms of the merger agreement subject to approval by EIP Pharma and Diffusion stockholders and satisfaction of other customary closing conditions, EIP Pharma will merge with a newly-created subsidiary of Diffusion. Immediately after the merger, the current equity and convertible debt holders of EIP Pharma are expected to own, in the aggregate, approximately 77.25% of the total number of outstanding shares of common stock of the combined company and the current stockholders of Diffusion are expected to own approximately 22.75%, in each case calculated on a fully diluted and as-converted basis, subject to adjustment as set forth in the merger agreement based on, among other things, the amount of Diffusion net cash (as defined in the merger agreement) at the closing date.

The combined company is expected to be renamed "CervoMed" and continue to trade on the Nasdaq Capital Market under a new ticker symbol, CRVO. The combined company would be headquartered in Boston, Massachusetts and led by a team with extensive drug development and leadership expertise, including John Alam, MD, Chief Executive Officer; Robert Cobuzzi, Jr., PhD, Chief Operating Officer; William Tanner, PhD, Chief Financial Officer; Kelly Blackburn, MHA, Senior Vice President, Clinical Development; and William Elder, General Counsel and Corporate Secretary. Sylvie Gregoire, PharmD, the current Chair of EIP Pharma, will serve as Chair of the Board of Directors for the combined company. The combined company's Board of Directors is expected to be composed of seven members, consisting of Dr. Gregoire, Jeff Poulton, currently EIP Pharma's Chair of the Audit Committee, Jane Hollingsworth, JD, currently Diffusion's Board Chair, Frank Zavrl, Dr. Marwan Sabbagh, Dr. Alam and Dr. Cobuzzi.

The merger agreement has been approved by the Boards of Directors of both companies. The merger is expected to close in mid-2023, subject to approvals by EIP Pharma and Diffusion stockholders, the effectiveness of a registration statement to be filed by Diffusion with the Securities and Exchange Commission (SEC) to register the shares of Diffusion common stock to be issued to EIP Pharma

security holders in connection with the merger, and other customary closing conditions.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. is serving as legal counsel to EIP Pharma. Canaccord Genuity is serving as financial advisor to Diffusion, and Dechert LLP is serving as legal counsel to Diffusion.

*Potential Conflicts of Interest*

30. The breakdown of the benefits of the deal indicate that Diffusion insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Diffusion.

31. Notably the Registration Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

32. Thus, while the Proposed Transaction is not in the best interests of Diffusion, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

33. On May 11, 2023, the Diffusion Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to

provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

34. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

   a. Adequate information as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction. If so, the identity of the directors who sat on the committee and what powers the committee had. If not, the reasoning for failing to create such a committee;

   b. Adequate information as to why the board agreed to a transaction where shareholder's interests will be diluted and no consideration will be received;

   c. Whether the confidentiality agreements entered into by the Company with EIP differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including EIP, would fall away; and

e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Diffusion's and EIP's Financial Projections*

35. The Registration Statement fails to provide material information concerning financial projections for Diffusion and EIP provided by Diffusion and EIP management to the Board and Canaccord and relied upon by Canaccord in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

36. Notably the Registration Statement reveals that as part of its analyses, Canaccord reviewed "certain projected cash balances of Diffusion prepared by management of Diffusion and certain projected financial and operating data of EIP prepared by management of EIP and adjusted by Diffusion, in each case as provided to CG by management of Diffusion (the "Projections")."

37. The Registration Statement therefore should have, but fails to provide, certain information in the projections that Diffusion and EIP management provided to the Board and Canaccord. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

38. With regard to the *Financial Projections* for EIP, prepared by EIP management, the Registration Statement fails to disclose material line items, including the following:

a. EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the definition for EBIT utilized and all underlying necessary metrics; and

b. Free Cash Flow; as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the definition for Free Cash Flow utilized and all underlying necessary metrics.

39. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

40. The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

41. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

42. Additionally, the Registration Statement fails to disclose any material projection data for Diffusion itself, preventing Plaintiff from being fully informed as to the financial outlook for the Company, and preventing Plaintiff from properly gauging the Proposed Transaction. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

43. Without accurate projection data for Diffusion and EIP being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Canaccord's financial analyses, or make an informed decision whether to vote in

favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Canaccord*

44. In the Registration Statement, Canaccord describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

45. With respect to the *Diffusion Selected Reverse Mergers Analysis*, the Registration Statement fails to disclose:

    a. The specific metrics for each transaction compared;

    b. The date on which each transaction compared closed;

    c. The aggregate value of each transaction compared; and

    d. The specific inputs and assumptions used to determine the applied range of implied total enterprise values of ($15.8) million and $2.6 million.

46. With respect to the *EIP Selected Public Companies Analysis*, the Registration Statement fails to disclose:

    a. The specific metrics for each company compared;

    b. The specific inputs and assumptions used to determine the applied range of implied total enterprise values for EIP of $65.0 million and $144.1 million.

47. With respect to the *EIP Selected Initial Public Offering Precedent Analysis*, the Registration Statement fails to disclose:

    a. The specific metrics for each IPO compared;

    b. The date on which each transaction compared closed;

    c. The aggregate value of each transaction compared; and

    d. The specific inputs and assumptions used to determine the applied range of range of implied equity values for EIP of $90.7 million to $262.8 million.

48. With respect to the *EIP Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a. The unlevered free cash flow projections for EIP utilized, as well as the specific inputs, metrics, and assumptions underlying this projection, including specifically, net operating profit after taxes (NOPAT), depreciation, capital expenditures, and changes in working capital.

    b. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 14.0% to 18.0%; and

    c. EIP's weighted average cost of capital and all inputs, metrics, and assumptions used to determine the same; and

    d. The number of outstanding shares of EIP common stock utilized.

49. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

50. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Diffusion

stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### **(Against All Defendants)**

51. Plaintiff repeats all previous allegations as if set forth in full herein.

52. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

53. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

54. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Registration Statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

55. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

58. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

61. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

62. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Diffusion's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

63. The Individual Defendants acted as controlling persons of Diffusion within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Diffusion to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Diffusion and all of its employees. As alleged above, Diffusion is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 15, 2023                    **BRODSKY & SMITH**

By: *Evan J. Smith*
   Evan J. Smith
   240 Mineola Boulevard
   Mineola, NY  11501
   Phone:  (516) 741-4977
   Facsimile (561) 741-0626

   *Counsel for Plaintiff*